UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| M. A., et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>THANG BOTANICALS, INC., et al.,<br><br>    Defendants. | Case No. 24-cv-07029-TLT<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AND MOTION TO STRIKE CLASSWIDE ALLEGATIONS**<br><br>Re: Dkt. No. 20 |

Addiction is a disease; and kratom products contribute to the illness. Kratom, classified as a "quasi-opiate" because of its opioid-like characteristics, is highly addictive and can result in withdrawal symptoms similar to traditional opioid withdrawal. Plaintiffs purchased Defendants' kratom products—products with packaging that fails to provide any warning regarding the risk of addition—and became addicted. Some Plaintiffs were able to recover; some were not. Still, at this stage of litigation, Plaintiffs have not sufficiently alleged their claims. The Court will give Plaintiffs an opportunity to amend.

Pending before the Court is Defendants Thang Botanicals, Inc. (d/b/a 7ΩHMZ) and FTLS Holdings, LLC's (collectively, "Defendants") motion to dismiss the complaint and strike nationwide class allegations. ECF 20. In its discretion, the Court determines that the motion is suitable for decision without oral argument. *See* Civil L.R. 7-1(b).

Having considered the parties' briefs, the relevant legal authority, and for the reasons below, the Court **GRANTS IN PART AND DENIES IN PART** the motion to dismiss and strike. The hearing set for April 1, 2025, is hereby **VACATED**.

## I. BACKGROUND

### A. Factual Allegations

Kratom derives from the leaves of the *mitragyna speciosa* plant. ECF 1 at ¶ 15. The plant's leaves can be harvested, dried, crushed into a powder, or combined with pouches, capsules, or liquid formulas. *Id.* ¶ 19. Kratom itself contains alkaloids, which can produce psychoactive effects when ingested. *Id.* ¶ 20.

One of the alkaloids responsible for Kratom's psychoactive effects is called 7-Hydroxymitragynin ("7-OH"). *Id.* 7-OH activates the brain's mu-opioid receptor, which happens to be the receptor most strongly associated with opioid addition. *Id.* ¶ 3. This strong association makes 7-OH comparable to opioids like percocet, morphine, and oxycontin. *Id.* ¶ 23. In fact, 7-OH withdrawal is similar to traditional opioid withdrawal, with symptoms including irritability, anxiety, difficulty concentrating, depression, sleep, disturbance including restless legs, tearing up, runny nose, muscle and bone pain, muscle spasms, diarrhea, decreased appetite, chills, inability to control temperature, extreme dysphoria, and malaise. *Id.* ¶ 28.

Today, kratom products can be purchased online or in person. *Id.* ¶ 18. One variety of kratom products is Defendants' 7-Hydroxymitragynine tablets ("7-OH Tablets"):

 

*Id.* ¶¶ 1, 46, 50.

Defendants, Delaware entities with principal places of business in San Francisco, California, market their 7-OH Tablets as over-the-counter supplements known for "unique effects." *Id.* ¶¶ 44–45. Plaintiffs allege that the packaging of Defendants' 7-OH Tablets fail to disclose the risk of addiction. *Id.* ¶¶ 43, 57, 91. The packaging allegedly contains a standard disclaimer, in "miniscule text" that consumers should consult a healthcare professional before use

and suggests a legal disclaimer on Defendants' website. *Id*. ¶ 55.

Plaintiffs were purchasers of Defendants' 7-OH Tablets. *Id*. ¶ 63–66. Plaintiff M.A., a resident of Highland Park, California, saw Defendants' 7-OH Tablets in a local smoke shop. *Id*. ¶ 63. He purchased the tablets after observing that the packaging did not mention any risks of potential harm. *Id*. However, after ingesting the entire pack at once, he experienced withdrawal symptoms including anxiety, depression, sleep issues, and extreme lethargy, whenever he tried to stop. *Id*. He has since succeeded in lowering his dose to one tablet a day. *Id*. Had M.A. known that Defendants' 7-OH tablets were highly addictive, he would have never purchased them. *Id*.

Plaintiff A.S., a resident of Gresham, Oregon, similarly purchased Defendants' 7-OH Tablets in a local smoke shop, became addicted, and suffered withdrawal symptoms including restlessness, cramps, vomiting, sweating, irritability, and loss of appetite. *Id*. ¶ 64. A.S. was able to quit using Defendants' 7-OH Tablets after going to a clinic. Had A.S. known that Defendants' 7-OH tablets were highly addictive, he would have never purchased them. *Id*.

Plaintiff N.A., a resident of Santa Monica, California, purchased and tried Defendants' 7-OH Tablets after being clean from opiates for 3.5 years. *Id*. ¶ 65. He quickly became addicted and experienced vomiting, mood swings, and pain. *Id*. He intends to check into a rehab facility. *Id*. Had N.A. known the tablets were highly addictive, he would have never purchased it. *Id*.

Plaintiff J.R., a resident of Nevada, purchased Defendants' 7-OH Tablets to help with pain from a 2017 leg amputation. *Id.* ¶ 66. J.R. is currently trying to overcome his addiction and suffers from withdrawals. *Id*. Had J.R. known that Defendants' 7-OH tablets were highly addictive, he would have never purchased them. *Id*.

**B.   Procedural History**

On August 23, 2024, Plaintiffs filed a class action complaint against Defendants. ECF 1. Plaintiffs' classes involve (A) a Nationwide Class on behalf of all persons nationwide who, within the applicable statute of limitations period, purchased 7-OHMZ kratom products; (B) a California Class on behalf of all persons who, within the applicable statute of limitations period, purchased 7-OHMZ kratom products in California; (C) an Oregon Class on behalf of all persons who, within the applicable statute of limitations period, purchased 7-OHMZ kratom products in Oregon; and

3

1  (D) a Nevada Class on behalf of all persons who, within the applicable statute of limitations
2  period, purchased 7-OHMZ kratom products in Nevada. ECF 1 at 69–70.

3        Plaintiffs allege the following claims against Defendants: (1) violation of California's
4  Unfair Competition Law ("UCL"); (2) violation of California's False Advertising Law ("FAL");
5  (3) violation of California's Consumers Legal Remedies Act ("CLRA"); (4) violation of Oregon's
6  Unlawful Trade Practices Act ("OUTPA"); (5) violation of Nevada Deceptive Trade Practices Act
7  ("DTPA"); (6) breach of implied warranty; (7) unjust enrichment; and (8) fraud by omission. ECF
8  1 at 80–166.

9        On January 8, 2025, Defendants filed a motion to dismiss and strike nationwide class
10 allegations pursuant to Fed. R. Civ. Pro. 12(b)(1), 12(b)(6), and 12(f). ECF 20. Defendants also
11 filed a request for judicial notice in support of their motion to dismiss and strike. ECF 20-1.
12 Plaintiffs timely filed an opposition and request for judicial notice in support of their opposition.
13 ECF 32–33. Defendants timely filed a reply. ECF 34.

## II. REQUESTS FOR JUDICIAL NOTICE AND INCORPORATION BY REFERENCE

      Generally, when assessing the sufficiency of a complaint under Rule 12(b)(6), the Court may not consider materials outside of the pleadings. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). Doing so would convert the motion to dismiss into a motion for summary judgment. *Id*. The two exceptions to this rule are judicial notice under Federal Rule of Evidence 201 and the incorporation by reference doctrine. *Id*.

      Under FRE 201(b), "[t]he Court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." "Unlike rule-established judicial notice, incorporation-by-reference is a judicially created doctrine that treats certain documents as though they are part of the complaint itself." *Khoja*, 899 F.3d at 1002. Documents "may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim," *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003), and "the documents' authenticity. . . is not contested," *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)).

Here, Defendants request the Court either take judicial notice or incorporate by reference nine exhibits. ECF 20-1. Plaintiffs request the Court take judicial notice of four exhibits. ECF 33.

### A. Defendants' Requests for Judicial Notice and Incorporation by Reference

Defendants seek judicial notice or incorporation by reference of the following nine exhibits: (1) Exhibit A, Thang's "14mg Tablet – 1 Count" front label; (2) Exhibit B, "1 Count Product" back label; (3) Exhibit C, "14mg Tablet – 3 Count" front label; (4) Exhibit D, 3 Count Product back label; (5) Exhibit E, Defendants' publicly available website showing a disclaimer; (6) Exhibit F, excepts from the National Institute on Drug Abuse's Website; (7) Exhibit G, a letter from Brett P. Giroir, M.D., Assistant Secretary of Health and Senior Advisory for Opioid Policy for the Department of Health and Human Services, dated August 16, 2018; (8) Exhibit H, excerpts from the WHO Organization Committee on Drug Dependence: forty-fourth report; and (9) Exhibit I, copy of the Cooperative Agreement to Support a Human Abuse Potential Study of Botanical Kratom by the US Food and Drug Administration. ECF 20-1.

Defendants argue that the Court should take judicial notice of Exhibits A–D, Defendants' product labels, because the labels are referenced or relied on throughout the complaint. ECF 20-1 at 2–3. Defendants also request the Court take judicial notice or incorporate by reference Exhibit E, Defendants' publicly available website and disclaimer. *Id*. at 4–5. Defendants further request the Court take judicial notice of Exhibits F–I, excepts or letters regarding drugs and Kratom, because the facts are not subject to reasonable dispute. *Id*. at 5.

Given that neither party disputes the authenticity of Exhibits A–D, and because the labels form the basis of Plaintiffs' claims, the Court takes judicial notice of Defendants' product labels, Exhibits A–D. *Hussain v. Campbell Soup Co.*, 747 F. Supp. 3d 1265, 1272 n.1 (N.D. Cal. 2024) ("The Court takes judicial notice of the of the entirety of the Product's labeling because it is incorporated by reference and relied upon in the amended complaint . . . Plaintiff does not dispute that taking judicial notice of the labeling is appropriate here.") (citing *Knievel v. ESPN*, 393 F.3d 1068, 1076–77 (9th Cir. 2005)).

However, regarding Exhibit E, Defendants website and disclaimer, the Court denies

1  Defendants request to take judicial notice because "[w]hen the sole justification for judicial notice
2  is that the information or documents 'appear on websites that are created and maintained by a
3  party to the litigation,' judicial notice is improper." *Schippell v. Johnson Consumer Inc.*, No. 23-
4  cv-410, 2023 WL 6178485 (C.D. Cal. Aug. 7, 2023) (quoting *Punian v. Gillette Co.*, No. 14-cv-
5  5028, 2015 WL 4967535, at *5 (N.D. Cal. Aug. 20, 2015)); *see also Gerritsen v. Warner Bros.*
6  *Entm't Inc.*, 112 F. Supp. 3d 1011, 1030 (C.D. Cal. 2015) (declining to take judicial notice of
7  "information published on private websites, including information that appears on [defendant's]
8  website.").

9        The Court further finds that the Complaint does not incorporate by reference Exhibit E
10 because the website disclaimer is only mentioned twice in the complaint and does not form the
11 basis of Plaintiffs' claim. *See Khoja*, 899 F. 3d at 1002 ("The mere mention of the existence of a
12 document is insufficient to incorporate the contents of a document.") (cleaned up); *In re Meta*
13 *Pixel Tax Filing Cases*, 724 F. Supp. 987, 1001 (N.D. Cal. 2024) ("Although Plaintiffs' complaint
14 refers two times to Meta's 'Terms of Service,' . . . this is not enough for the document to be
15 incorporated by reference into the complaint."). As alleged, Plaintiffs' claims are based on
16 Defendants' failure to disclose the risks addiction on the Defendants' *packaging*—not Defendants'
17 website. *See* ECF 1 ¶¶ 43 ("Defendants therefore know or should have known that kratom users
18 can develop addiction. Yet, Defendants fail to disclose this material fact on their advertisements
19 or on their Products' packaging."); 57 (Defendants' 7-OH Tablets pose an unreasonable health
20 hazard, and Defendants had a duty to disclose this fact *on their packaging*.") (emphasis in
21 original); 91 ("Defendants failed to disclose that 7-OH is addictive on their Products' packaging");
22 ECF 32 at 5 ("Plaintiffs' claims are fundamentally premised on the theory that Defendant failed in
23 its duty to disclose on its Products' packaging that 7-OH consumption poses a risk of addiction
24 and physical withdrawal symptoms, both of which are unreasonable health hazards.").

25       Regarding Defendants' Exhibits F–I, the Court finds that the exhibits can be accurately and
26 readily determined and agrees that to take judicial notice of the reports and letters publicly
27 available on websites. *See Cover v. Windsor Surry Co.*, No. 14-cv-5262, 2016 WL 520991, at *1
28 n.1 (N.D. Cal. Feb. 10, 2016) (taking judicial notice of "technical standards published by

American Society of the International Association for Testing and Materials . . . because the standards can be accurately and readily determined, and their accuracy cannot be, and has not been, reasonably questioned."); *Della v. Colgate-Palmolive Co.*, No. 23-cv-4086, 2024 WL 457798, at *18 (N.D. Cal. Feb. 6, 2024) ("It is well-established that under Rule 201 of the Federal Rules of Evidence, courts may take judicial notice of public records that are downloaded from an agency's official website.").

### B. Plaintiffs' Requests for Judicial Notice

In support of their opposition to Defendants' motion to dismiss and motion to strike, Plaintiffs seeks judicial notice of the following four exhibits: (1) FDA Import Alert 54-15, published on February 28, 2014; (2) copy of the full National Institute on Drug Abuse's webpage about kratom; (3) November 14, 2017 statement by FDA Commissioner Scott Gottlieb, M.D. on "deadly risks associate with kratom"; (4) February 6, 2018 statement by FDA Commissioner Scott Gottlieb, M.D. on "scientific evidence on the presence of opioid compounds in Kratom." ECF 33.

Plaintiffs request the Court take judicial notice of the four exhibits because the exhibits are public records, not offered for the truth of the matter asserted, and public records may be judicially noticed. ECF 33. Defendants do not oppose Plaintiffs' request for judicial notice. ECF 34.

As discussed above, the Court may take judicial notice of information published on a publicly available government entity website. *See supra* section II(A). The Court grants Plaintiffs' request for judicial notice. *See Cover*, 2016 WL 520991, at *1.

## III. LEGAL STANDARD

### A. Motion to Dismiss

#### i. Rule 12(b)(1)

Pursuant to Rule 12(b)(1), a party may move to dismiss for lack of subject matter jurisdiction. "[L]ack of Article III standing requires dismissal for lack of subject matter jurisdiction under [Rule] 12(b)(1)." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). The "irreducible constitutional minimum" of standing requires that a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578

U.S. 330, 338 (2016).  "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements," which at the pleadings stage means "'clearly . . . alleg[ing] facts demonstrating each element.'"  *Id*. (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

    ii. **Rule 12(b)(6)**

Pursuant to Rule 12(b)(6), a party may move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  To overcome a motion to dismiss, a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'" *Levitt v. Yelp! Inc*., 765 F.3d 1123, 1135 (9th Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). The Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co*., 519 F.3d 1025, 1031 (9th Cir. 2008).  However, "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).

### B. Motion to Strike

Before responding to a pleading, a party may move to strike from a pleading any "redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  The essential function of a Rule 12(f) motion is to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to the trial." *Wang v. OCZ Tech. Grp., Inc*., 276 F.R.D. 618, 624 (N.D. Cal. 2011) (quoting *Whittlestone, Inc. v. Handi-Craft Co*., 618 F.3d 970, 973 (9th Cir. 2010)).  Just as with a motion to dismiss, the court should view the pleading sought to be struck in the light most favorable to the nonmoving party. *Id*.

## IV. DISCUSSION

Defendants seek to dismiss the complaint and dismiss or strike Plaintiffs' nationwide class claims.  ECF 20.

### A. Motion to Dismiss

Defendants move to dismiss the entire complaint, including Plaintiffs' (i) request for injunctive relief, (ii) claims under the UCL, CLRA, FAL, OUTPA, and NDTPA ("Consumer

Protection Claims"); (iii) FAL claim, (iv) breach of implied warranty claim, (v) unjust enrichment, and (vi) fraud by omission claims. ECF 20 at 7–18.

### i. Plaintiffs Concede That They Lack Article III Standing to Seek Injunctive Relief.

Defendants argue that, because Plaintiffs are now aware of the risk of addiction associated with Defendants' 7-OH Tablets, Plaintiffs lack standing to pursue injunctive relief. ECF 20 at 7–9. "As to injunctive relief, Plaintiffs concede they lack standing." ECF 32 at 5 n.3.

Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiffs' injunctive relief claims.

### ii. The Court Denies Defendants' Motion to Dismiss Plaintiffs' Consumer Protection Claims.

Defendants asks the Court to dismiss Plaintiffs' Consumer Protection Claims because (a) Defendants did not have a duty to disclose risk of addition associated with their 7-OH Tablets; (b) Defendants' website informs the reasonable consumer about the risk of addiction; and (c) Plaintiffs may not bring consumer protection claims based on third-party representations. ECF 20 at 9–14.

#### a. The Complaint Sufficiently Alleges Defendants Had a Duty to Disclose Risk of Addiction.

Defendants argue that they did not have a duty to disclose the risk of addiction because they Defendants exclusive knowledge of the addiction risk and, in any event, disclosed the risk on Defendants' website. ECF 20 at 13–14. Plaintiffs argue that the complaint sufficiently alleges that Defendants' failure to disclose the addiction risk relates to an unreasonable safety hazard. ECF 32 at 9–18. Plaintiffs further argue that Defendants had exclusive knowledge. *Id*.

A "defendant only has a duty to disclose when either (1) the defect at issue relates to an unreasonable safety hazard *or* (2) the defect is material, 'central to the product's function,' and the plaintiff alleges one of the four *LiMandri* factors." *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1085 (N.D. Cal. 2022) (quoting *In re Toyota RAV4 Hybrid Fuel Tank Litig*., 534 F. Supp. 3d 1067, 1102 (N.D. Cal. 2021)). "The *LiMandri* factors are (1) the defendant is in a fiduciary relationship with the plaintiff; (2) the defendant had exclusive knowledge of material facts not

known to the plaintiff; (3) the defendant actively conceals a material fact from the plaintiff; or (4) the defendant makes partial representations but also suppresses some material facts." *Hammerling*, 615 F. Supp. 3d at 1085 (citing *LiMandri v. Judkins*, 60 Cal. Rptr. 2d 539, 543 (Cal. Ct. App. 1997).

      Here, the Complaint alleges that the 7-OH in Defendants 7-OH Tablets "is extremely addictive and, as a result, tens of thousands of unsuspecting consumers have developed 7-OH dependencies that cause them serious physical, psychological, and financial harm." ECF 1 at ¶ 8. The complaint further explains that 7-OH carries a high risk of addiction and withdrawal that is similar to traditional opioid withdrawal, with symptoms including irritability, anxiety, difficulty concentrating, depression, sleep, disturbance including restless legs, tearing up, runny nose, muscle and bone pain, muscle spasms, diarrhea, decreased appetite, chills, inability to control temperature, extreme dysphoria, and malaise. *Id*. ¶ 28. Each Plaintiff suffered injury after taking Defendants' products. *Id.* 66–67. The Court finds that these allegations are sufficient to allege that the defect at issue, failure to disclose the risk of addiction, relates to an unreasonable safety hazard. *See J.J v. Ashlynn Marketing Group, Inc*., 749 F. Supp. 3d 1086, 1098–99 (S.D. Cal. 2024) (finding allegations that kratom is addictive, works on same opioid receptors in the brain, result in withdrawal symptoms, and plaintiffs suffered injury to sufficiently allege an unreasonable safety hazard). The Court need not address Defendants' remaining argument on Defendants' exclusive knowledge. *See Brown v. Madison Reed, Inc*., 622 F. Supp. 3d 786, 805 (N.D. Cal. 2022) ("There are two situations in which such a duty to disclose arises. First is when the undisclosed information "cause[s] an unreasonable safety hazard." Second is when (1) the omission is material, (2) the defect is central to the product's function, and (3) one of the *LiMandri* factors is met.").

      Accordingly, the Court DENIES Defendants' motion to dismiss Plaintiffs' Consumer Protection Claims to the extent Defendants argue that Defendants had no duty to disclose the risk of addiction.

> b. The Complaint Sufficiently Alleges that Defendants' Packaging Deceived Reasonable Consumer of Associated Health Risks.

Defendants argue Plaintiffs cannot allege that a reasonable consumer would be deceived by Defendants' packaging because the packaging mentions Defendants' website, which includes a disclaimer about the health risks associated with Kratom. ECF 20 at 12. Plaintiffs argue that a fine-print and back-of-label citation to Defendants' website fails to notify reasonable consumers of the risk of addiction associated with Defendants' 7-OH Tablets. ECF 32 at 6–9.

Both parties agree that the reasonable consumer standard applies to Plaintiffs' claims. *See* ECF 20 at 9; 32 at 6. The reasonable consumer standard "requires a plaintiff to show that members of the public are likely to be deceived by the defendant's marketing claims." *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 777 (9th Cir. 2024) (internal quotations omitted). There must be "a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id*. (internal quotations omitted). "Courts have recognized that the deceptive nature of a business practice . . . is usually a question of fact that is inappropriate for . . . a motion to dismiss." *Broomfield v. Craft Brew All., Inc.*, No. 17-cv-01027, 2017 WL 3838453, at *5 (N.D. Cal. Sept. 1, 2017). The granting of a motion to dismiss consumer protection claims is a "rare situation." *Williams v. Gerber Products Co.*, 552 F.3d 934, 939 (9th Cir. 2008).

This is not one of those rare situations. Here, Plaintiffs allege Defendants' 7-OH Tablets fail to disclose the risk of addiction on the packaging, and that reasonable consumers would be deceived by said packaging. *See* ECF 1 at ¶¶ 43 ("Defendants therefore know or should have known that kratom users can develop addiction. Yet, Defendants fail to disclose this material fact on their advertisements or on their Products' packaging."); 57 (Defendants' 7-OH Tablets pose an unreasonable health hazard, and Defendants had a duty to disclose this fact *on their packaging*.") (emphasis in original); 91 ("Defendants failed to disclose that 7-OH is addictive on their Products' packaging"); 123 ("Defendants' misrepresentations and nondisclosures deceive and tend to deceive a reasonable consumer and the general public."). These allegations are sufficient to survive a motion to dismiss. *See Zeigler v. WellPet LLC*, 304 F. Supp. 3d 837, 852 (N.D. Cal. 2018) ("Plaintiffs premise their claims on the theory that WellPet's Products' labels are misleading

11

because they fail to disclose that they contain arsenic, lead, or BPA. . . ."); *Schwartz v. Bai Brands, LLC*, No. 19-cv-6249, 2020 WL 5875019, at *5 (C.D. Cal. July 31, 2020) ("[P]laintiff alleges that the front labels fail to disclose that the Cocofusion beverages do not contain the actual fruit ingredient of the second identified characterizing flavor . . . Here, plaintiff has plausibly alleged that consumers are likely to be deceived by the labels on the Cocofusion beverages"). Whether a reasonable consumer would be deceived by Defendants' labels is a question of fact that is inappropriate to determine at this stage of the proceedings. *See Gustavson v. Wringley Sales Co.*, 961 F. Supp. 2d 1100, 1131 (N.D. Cal. 2013) ("[C]ourts recognize that whether a practice is deceptive, fraudulent, or unfair is generally a question of fact that is not appropriate for resolution on the pleadings.") (internal quotations omitted); *Branca v. Bai Brands, LLC*, No. 18-cv-757, 2019 WL 1082562, at *9 (S.D. Cal. Mar. 9, 2019) ("Branca contends if Defendants had disclosed all material information regarding the Products on the label, a reasonable consumer would not have been deceived. . . As held above, the Court cannot determine at this stage whether the Product label was false or misleading.").

Defendants' citation to *Swearingen v. Healthy Beverage, LLC*, No. 13-cv-04385, 2017 WL 1650552 (N.D. Cal. May 2, 2017) does not save their argument. In *Swearingen*, the plaintiffs' alleged that Healthy Beverage's website was "incorporated into the label for each of Defendants' products." *Swearingen*, 2017 WL 1650552 at *4. Notably, the *Swearingen* plaintiffs conceded that they read the website. *Id*. In contrast, here, there is no allegation that Plaintiffs read Defendants' website or saw the website listed on the back of Defendants' 7-OH Tablet packaging. *See* ECF 1 at 63–66, 80–137. Under these circumstances, and making all inferences in favor of Plaintiffs, "there is a question of fact whether a reasonable consumer would notice it and follow it to the disclaimer." *Anthony v. Pharmavite*, No. 18-cv-2636, 2019 WL 109446, at *4 (N.D. Cal. Jan. 4, 2019); *see also Gatling-Lee v. Del Monte Foods, Inc.*, No. 22-cv-892, 2023 WL 11113888, at *9 (N.D. Cal. Mar. 28, 2023) ("In evaluating the efficacy of such a disclaimer, courts consider factors such as the font size, placement, and emphasis.") (internal quotations omitted).

Accordingly, the Court DENIES Defendants' motion to dismiss Plaintiffs' Consumer Protection Claims to the extent Defendants seek to dismiss those claims based on the sufficiency

of Defendants' disclaimer and website.

       c. **Plaintiffs Concede That Their Consumer Protection Claims Are Based on Defendants Omission, Not Third-Party Representations.**

  Defendants argue that Plaintiffs may not bring their consumer protection claims based on representations made by third parties. ECF 20 at 12. Plaintiffs concede that their claims are based on Defendants' omissions, not third-party representations. ECF 32 at 18–19.

  Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiffs' Consumer Protection Claims to the extent the claims are based on third party representations.

    **iii. Plaintiffs Agree That the Complaint Fails to Allege a FAL Claim.**

  Defendants argue the complaint fails to allege a FAL claim because the claim is improperly based on an omission. ECF 20 at 15. "Plaintiffs concede their claims for violation of FAL." ECF 32 at 5 n.3. Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiffs' FAL claim.

    **iv. Plaintiffs Fail to Sufficiently Allege a Breach of Implied Warranty Claim.**

  Defendants argue the complaint fails to sufficiently allege a breach of implied warranty claim because the complaint fails to identify the applicable state law, does not allege that Defendants' 7-OH Tablets were unfit of ordinary purpose, does not identify any promises or affirmations on Defendants' 7-OH Tablets packaging, and failed to allege privity. ECF 20 at 15–20; ECF 34 at 14. Plaintiffs argue that the complaint sufficiently alleges that Defendants' products failed to conform to the promises or affirmations of fact made on the products' containers or labels. ECF 32 at 19.

  Pursuant to UCC § 2–314(1), "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." UCC § 2–314(1). "Merchantable" has several definitions, including being "fit for the ordinary purposes for which such goods are used" and "conform[ing] to the promises or affirmations of fact made on the container or label if any." UCC § 2-314(2)(a)–(f); *see also Nacarino v. KSF Acquisition Corp.*, 642 F. Supp. 3d 1074, 1086 (N.D. Cal. 2022) ("The term 'merchantable,' . . . has several meanings . . . ."); *Caldwell v. Nordic Naturals, Inc.*, 709 F. Supp. 3d 889, 908 (N.D. Cal. 2024) ("As Plaintiff

13

points out, there are other ways to show that a product is not merchantable.").

Here, Plaintiffs' opposition only proffers a breach of implied warranty theory based on UCC § 2–314(2)(f), which defines merchantability as "conform[ing] to the promises or affirmations of fact made on the container or label if any." ECF 32 at 19. Thus, Plaintiffs' breach of implied warranty claim is based on Defendants' failure to include a warning about the risk of addiction on Defendants' 7-OG Tablets' labels. *Id*. Because the complaint does not identify an affirmative statement or promise, the Court finds that the complaint fails to sufficiently allege a breach of implied warranty claim. *See Bailey v. Rite Aid Corp.*, No. 18-cv-6926, 2019 WL 4260394, at *8 (N.D. Cal. Sept. 9, 2019) (dismissing breach of implied warranty claim where "plaintiff fails to refer to or allege that there is actual language on the packaging for defendant's Rite Aid RR Gelcaps (or elsewhere on the product), which actually promises faster relief."); *Lam v. General Mills, Inc.*, 859 F. Supp. 2d 1097, 1106 (N.D. Cal. 2012) (dismissing breach of implied warranty claim because the claim "fail[ed] to point to any affirmative statement, whether it be in General Mills's advertising or the Fruit Snacks' packaging, indicating that the Fruit Snacks are healthful.").

Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiffs' breach of implied warranty claim.

### v. Plaintiffs Do Not Dispute Defendants' Motion to Dismiss Plaintiffs' Unjust Enrichment Claims.

Defendants argue the complaint fails to sufficiently allege unjust enrichment because Plaintiffs do not allege the applicable state law and unjust enrichment is not a cognizable cause of action under California law. ECF 20 at 17. Plaintiffs fail to address Defendants' unjust enrichment arguments. *See* ECF 32.

"The Court construes [t]his failure to do as an abandonment of those claims." *Qureshi v. Countrywide Home Loans, Inc.*, No. 09-cv-419, 2010 WL 841669, at *6 n.2 (N.D. Cal. Mar. 10, 2010); *see also Castillo v. City of Watsonville*, No. 20-cv-4395, 2020 WL 5798237, at *6 (N.D. Cal. Sept. 29, 2020) ("Plaintiff's Opposition fails to address this argument, or her state law claims against Chief Honda generally. Accordingly, the Court will treat the state law claims against

Chief Honda as abandoned."). The Court GRANTS Defendants' motion to dismiss Plaintiffs' unjust enrichment claims.

### vi.   Plaintiffs Fail to Sufficiently Allege Their Fraud by Omission Claim.

Defendants argue the complaint fails to sufficiently allege which state law applies to Plaintiffs' fraud by omission claim and, even if Plaintiffs indicated which law applied, the claim fails because Defendants' website disclaimer advised Plaintiffs of the risk of addiction. ECF 20 at 18. Plaintiffs argue that they seek to bring their claims under the laws of the states where they reside. ECF 32 at 20. Plaintiffs further assert that the complaint sufficiently alleges Defendants failed to disclose the addiction risk associated with Defendants' 7-OH Tablets. ECF 32 at 20.

As discussed above, the Court declines Defendants' invitation to determine whether Defendants' disclaimer sufficiently advised Plaintiffs of harm. *See Graebner v. James*, No. 12-cv-1694, 2012 WL 6156729, at *5 (N.D. Cal. Dec. 11, 2012) ("Plaintiffs allege that defendants failed to disclose the true risks of investing . . . This is sufficient to state a plausible claim for fraud by omission. The materiality of the omissions is a question of fact."). However, because Plaintiffs agreed to limit their nationwide claims, including Plaintiffs' fraud by omission claim, to the laws of the states where Plaintiffs reside, the Court GRANTS Defendants' motion to dismiss Plaintiffs' fraud by omission claims. *See* ECF 32 at 5 n.5 ("Plaintiffs further agree to limit their other nationwide claims (Counts Six, Seven, and Eight) to the States of California, Oregon, and Nevada."); *cf. Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1145 (N.D. Cal. 2010) ("It is axiomatic that the complaint may not be amended by briefs in opposition to a motion to dismiss.").

### B.   Plaintiffs Do Not Dispute Defendants' Motion to Dismiss or Strike Plaintiffs' Nationwide Class Claims.

Defendants ask the Court to either dismiss or strike Plaintiffs' nationwide class allegations. ECF 20 at 18–24. Defendants argue Plaintiffs lack standing to assert claims on behalf of states outside of California, Oregon, and Nevada, applying California law to out of state class members would violate due process, and California's conflict of law principles prevent a nationwide class action. *Id*. Plaintiffs concede their nationwide claims and agree to expressly limit their common law claims to California, Oregon, and Nevada. ECF 32 at 19 n.7; *see also id*. at 5 n.3 ("Plaintiffs

15

1   further agree to limit their other nationwide claims (Counts Six, Seven, and Eight) to the States of
2   California, Oregon, and Nevada.").

3   Accordingly, the Court **GRANTS** Defendants' motion to dismiss or strike Plaintiffs'
4   nationwide class claims. Plaintiffs' sixth cause of action for breach of implied warranty, seventh
5   cause of action for unjust enrichment, and eighth cause of action for fraud are dismissed to the
6   extent those claims seek to maintain a nationwide class.

## V.     LEAVE TO AMEND

Pursuant to Rule 15(a)(2), A party may amend its pleadings with the opposing party's written consent or the court's leave. Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id*. This policy is applied with "extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc*., 316 F.3d 1048, 1051 (9th Cir. 2003) (internal citation omitted). The Supreme Court has outlined five factors to consider in deciding whether leave to amend is warranted: (1) bad faith on the part of the movant, (2) undue delay by the movant, (3) repeated amendments by the movant, (4) undue prejudice to the nonmovant, and (5) futility of the proposed amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962). "Amendment need not be permitted when it would be futile—that is, when no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim." *Invenergy Thermal LLC v. Watson*, 2024 WL 5205745, at *3 (9th Cir. 2024) (internal quotation omitted).

The Court finds that prejudice to Defendants would be minimal. After considering the remaining Rule 15 factors, and in an abundance of caution, the Court finds the presumption in favor of granting Plaintiffs leave to amend applies. *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) ("[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."); *Snow v. Corizon Healthcare*, 842 F. App'x. 135, 135 (9th Cir. 2021) (holding "dismissal without leave to amend . . . premature because it is not absolutely clear that any deficiencies could not be cured by amendment.") (internal quotations omitted); *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 777 (9th Cir. 2024) ("in federal court, dismissals of UCL, FAL, and CLRA claims at the pleadings stage have "occasionally been upheld," but such cases are

16

"rare." . . . Dismissal is appropriate when "the advertisement itself [makes] it impossible for the plaintiff to prove that a reasonable consumer [is] likely to be deceived.").

Plaintiffs may not plead new claims. Should the scope of any amendment exceed the leave to amend granted by this order, the Court will strike the offending portions of the pleading under Rule 12(f). *See* Fed. R. Civ. P. 12(f) ("The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act: (1) on its own; or (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.").

## VI.  CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the complaint and strike nationwide class allegations is **GRANTED IN PART AND DENIED IN PART**.

Given that Plaintiffs conceded their injunctive relief, FAL, and unjust enrichment claims, the Court GRANTS Defendants' motion to dismiss those claims.  Because Plaintiffs also agreed to limit their nationwide claims and conceded that Plaintiffs' Consumer Protection Claims are not based on third party representations, the Court GRANTS Defendants' motion to dismiss and strike Plaintiffs' nationwide claims and GRANTS Defendants' motion to dismiss Plaintiffs' Consumer Protection Claims to the extent those claims are based on third party representations.  The Court further finds that the complaint fails to sufficiently allege Plaintiffs' breach of implied warranty and fraud by omission claims and GRANTS Defendants' motion to dismiss as to those claims.

The Court DENIES Defendants' motion to dismiss Plaintiffs' remaining Consumer Protection Claims to the extent those claims are based on the sufficiency of Defendants' disclaimer and website.

Out of an abundance of caution, the Court grants Plaintiffs leave to amend their injunctive relief request and nationwide class allegations, in addition to Plaintiffs' Consumer Protection Claims, FAL, breach of implied warranty, unjust enrichment, and fraud by omission claims. *See Snow v. Corizon Healthcare*, 842 F. App'x. 135, 135 (9th Cir. 2021) (holding "dismissal without

1  leave to amend . . . premature because it is not absolutely clear that any deficiencies could not be
2  cured by amendment.") (internal quotations omitted).
3       The hearing set for April 1, 2025, is hereby **VACATED**.
4       Plaintiffs shall file an amended complaint consistent with this order no later than April 15,
5  2025.  No new claims or parties may be added without the Court's prior approval. A failure to
6  meet this deadline will result in dismissal with prejudice under Federal Rule of Civil Procedure
7  41(b).
8       This Order resolves ECF 20.
9       IT IS SO ORDERED.
10 Dated: March 28, 2025

TRINA L. THOMPSON
United States District Judge

United States District Court
Northern District of California